IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Max Clement,                                                   Case No. 3:05CV7317

           Plaintiff,

v.                                                          ORDER

Sypris Technologies,

           Defendant.

       This is a diversity suit between a former employee of ArvinMeritor Corporation and Sypris Technologies, a company which purchased the assets of ArvinMeritor corporation. At the time of purchase, the plaintiff was on leave, receiving temporary total disability workers compensation payments.

       Sypris negotiated with plaintiff's union prior to the closing of the sale. In response to a statement by Sypris that it would not offer continuing employment to persons on sick leave, the union negotiated an understanding that such employees would have eight months in which to return to full time work. At the end of that period, any employee who had not returned to work would no longer be employable by the company.[1]

       Some former ArvinMeritor employees covered by the eight-month understanding returned within that period. Plaintiff, however, was not one of them.

---

[1] An employee seeking to return during the eight month period had to present a doctor's release. Plaintiff never presented such release. It appears that, at the time he filed suit, he was continuing to receive temporary total disability benefits.

The gravamen of plaintiff's complaint is that he was "terminated" in violation of the doctrine announced by the Ohio Supreme Court in *Coolidge v. Riverdale Local School Dist.*, 100 Ohio St.3d 141 (2002). Pending are counter-motions for summary judgment.

For the reasons that follow, the plaintiff's motion shall be granted and the defendant's motion shall be denied.

## Discussion

In *Coolidge*, the Ohio Supreme Court stated:

> An employee who is receiving temporary total disability compensation pursuant to R.C. 4123.56 may not be discharged solely on the basis of absenteeism or inability to work, when the absence or inability to work is directly related to an allowed condition

.
(Syllabus).

As defendant correctly points out in its motion, the plaintiff was never one of its "employees." However, he was an employee of defendant's predecessor. When defendant acquired the assets from the predecessor, it agreed to retain all but ten of plaintiff's co-workers. The exceptions were plaintiff and others who, like him, were on sick leave. Some, if not all of those other ten individuals obtained medical releases or other permission and returned to work within the eight month period established by the defendant and plaintiff's union.

There can be no doubt that, had plaintiff been able to obtain a medical release within the eight month period set by the defendant and the union, he would have been allowed to go back to work. Whether what happened to plaintiff is called a termination, discharge, dismissal, declination, or something else, the undisputed fact is that he lost his job during a period in which he was on leave receiving workers compensation benefits. This is so, even if, as defendant contends, it never enrolled

him on its roster, provided benefits to him, or otherwise treated him as though he were an "employee."

I conclude, accordingly, that plaintiff's situation can appropriately be described as one of "constructive employment."

The question raised by this case is whether plaintiff's loss of his job contravened *Coolidge*. I conclude that it did.

The plaintiff in *Coolidge* was a school teacher who was seriously injured by a pupil. She received a temporary total disability workers compensation award. When her sick and other accrued leave expired, she was notified that she would be terminated. At the time of termination, she was still unable to return to work and continuing to receive total temporary disability benefits.

"The overriding issue," the Court stated in *Coolidge*, "is whether public policy embodied in the Workers' Compensation Act protects an employee who is receiving [temporary total disability] TTD compensation from being discharged solely because of the disabling effects of the allowed injury, that is, absenteeism and inability to work." 100 Ohio St. 3d at 144.

The Court held that termination under such circumstances, though not retaliatory [i.e., in response to her application for and receipt of benefits], violated the public policy embodied in Ohio's workers compensation statute:

> In our opinion, the policy of protection embodied in the Workers' Compensation Act can be effectuated only if an employer is not permitted to discharge an employee for being absent from work due to an allowed injury for which the employee is receiving TTD compensation. We hold, therefore, that an employee who is receiving TTD compensation pursuant to R.C. 4123.56 may not be discharged solely on the basis of absenteeism or inability to work, when the absence or inability to work is directly related to an allowed condition.

*Id*. at 150.

I am persuaded that the Ohio Supreme Court, whose decision in *Coolidge* was unanimous, would find plaintiff's case legally indistinguishable from the standpoint of Ohio public policy from that of the schoolteacher in that case. Like the plaintiff there, the plaintiff in this case lost his job "solely because of the disabling effects of the allowed injury, that is, absenteeism and inability to work." *Id.* at 144.

Defendant argues that the fact that the plaintiff was a member of a union which had a collective bargaining agreement with the defendant forecloses plaintiff's claim on two grounds: 1) his union status, without more, bars him, under *Haynes v. Zoological Society of Cincinnati*, 73 Ohio St. 3d 254, 258 (1995), from asserting a public policy tort claim; and 2) any such claim is pre-empted under § 301 of the federal Labor-Management Relations Act.

With regard to defendant's first contention – that union members cannot assert a claim under *Cooldige* – the simple fact is that the plaintiff in *Coolidge* was represented by a union. Given the overlap in circumstances between that case and this – namely, that the plaintiffs in both cases lost their jobs while on leave and receiving temporary total disability workers compensation benefits – *Coolidge* must be viewed as controlling. This is so, even if, as defendant point out, *Coolidge* neither cited nor discussed *Haynes*, much less harmonized the decisions in those two cases.

The only way they can be harmonized, in light of the numerous cases after *Coolidge* that have applied *Haynes* to disallow public policy tort claims by union workers in wrongful discharge cases, *see, e.g., Ferguson v. Lear Corp.,*155 Ohio App.3d 677, 685 (2003) ("appellant is a union member and presumably the beneficiary of a collective bargaining agreement. . . [who] is not an employee at will and, therefore, may not pursue" a public policy wrongful discharge claim), is to conclude that the Ohio Supreme Court in *Coolidge* created an exception to the *Haynes* bar in cases

4

involving persons, including union members, receiving temporary total disability workers compensation payments. *See Urban v. Osborn Mfg., Inc.* — Ohio App.3d —, — , 2006 WL 562162, *3 (2006) ("*Coolidge* did not give a blanket extension to all employees covered by a CBA, but found that the workers' compensation system redefined the employment relationship.").

Likewise, the decision in *Klepsky v. United Parcel Service*, 2005 U.S. Dist. LEXIS 21395 (N.D. Ohio 2005), on which the defendant relies, is distinguishable. The plaintiff there claimed a violation of Ohio's "whistleblower" statute, O.R.C. § 4113.52, and a correlative claim of public policy wrongful discharge. The plaintiff in that case, unlike this case and *Coolidge*, was not on leave receiving workers compensation when he lost his job.

Finally, defendant claims that plaintiff's claim is preempted under the § 301 of the Labor Management Relations Act, 29 U.S.C. § 151. Preemption under § 301 occurs, however, only if a plaintiff's state-law claim requires interpretation of the collective bargaining agreement between his union and the employer. *See, e.g.*, *Alongi v. Ford Motor Co.*, 386 F.3d 716, 724 6th Cir. 2004) ("If the right both arises from state law and does not require contract interpretation, then there is no preemption.").

Plaintiff's claim neither arises under the collective bargaining agreement nor requires interpretation of that agreement. It is, therefore, not preempted.

## Conclusion

For the foregoing reasons, I conclude that the plaintiff's loss of his job when he was on leave receiving temporary total disability workers compensation payments violated the doctrine enunciated by the Ohio Supreme Court in *Coolidge v. Riverdale Local School Dist.*, 100 Ohio St.3d 141 (2002). Although plaintiff was never employed by the defendant, its actions, on acquiring the

assets and workforce of ArvinMeritor corporation, caused him to lose an opportunity he otherwise would have had to become employed with the defendant. Plaintiff lost that opportunity solely because he did not obtain a doctor's release and return to work full time within a specified time period. Having concluded that the plaintiff had a constructive employment relationship with the defendant, I also conclude that this case is otherwise indistinguishable from *Coolidge*.

It is, accordingly,

ORDERED THAT plaintiff's motion for summary judgment be, and the same hereby is granted; and defendant's motion for summary judgment be, and the same hereby is denied.

A pretrial conference is scheduled for May 22, 2006 at 9:45 a.m.

So ordered.

s/James G. Carr
James G. Carr
Chief Judge